**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HATTIE EMANUEL, :

    Plaintiff, :

vs. : CA 06-0005-C

JO ANNE B. BARNHART, :
Commissioner of Social Security,
     :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 17 (order of reference)) Upon consideration of the administrative record, plaintiff's

proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the August 23, 2006 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to status-post hysterectomy with surgical complications (primarily bladder problems), depression, hypertension with hypertensive heart disease, and status-post brain infarct with dizziness. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.  The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3.  The claimant has a depressive disorder and a history of hysterectomy with surgical complications.
>
> 4.  The claimant has been diagnosed with various impairments. However, the mere diagnosis of an impairment does not automatically reflect or establish the presence of

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

functional restrictions. The medical evidence, as summarized herein, clearly establishes that the claimant's diagnosed impairments do not reasonably result in more than minimal limitations in her ability to successfully perform the demands of work or work-like activities for a period of at least 12 consecutive months. There is a glaring absence of radiographic studies, laboratory analyses and diagnostic evaluations establishing any significant disease process that could be expected to inhibit the claimant's mental or physical functional capacity for 12 months. Quite simply, the claimant experienced complications from her hysterectomy, was treated for such complications and has not experienced residual effects from her surgeries that can objectively be found to result in long-term functional restrictions.

5.   It is the claimant's responsibility to provide medical evidence that supports her alleged disability. See Nathan L. Ellison v. Jo Anne B. Barnhart, supra. The claimant has failed to meet this burden in this cause.

6.   The claimant does not have an impairment, or combination of impairments, that has resulted in more than minimal functional limitations for a period of at least 12 consecutive months; therefore, the claimant does not have a "severe" impairment under the Act (20 CFR § 404.1520).

7.   The hypothetical posed to the vocational expert by the claimant's representative was not objective in nature and is unsupported by the totality of the clinical findings. As such, the vocational expert's response to this hypothetical question cannot be given determinative weight.

8.   The claimant was not under a "disability," as defined in the Act, at any time through the date of this decision (20 CFR § 404.1520(c)).

(Tr. 35-36)  The Appeals Council affirmed the ALJ's decision (Tr. 9-11) and

thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

This Court must determine whether the Commissioner's decision to deny claimant benefits on the basis that she did not have a severe mental or physical impairment for twelve consecutive months is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, or handling; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[2]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings

---

[2] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

> which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").

The administrative record in this case is replete with evidence establishing that the claimant suffered from a history of hysterectomy with surgical complications for a period of twelve continuous months. (*See generally* Tr. 135-1308) Emanuel was admitted to Springhill Memorial Hospital on November 7, 2002 for an abdominal hysterectomy, which was accomplished laparoscopically. (*See id.* at 137-139) Plaintiff's bladder was lacerated during the hysterectomy and initially sutured (Tr. 138); however, two additional bladder surgeries were required before Emanuel was released from the hospital on December 10, 2002 (*compare* Tr.1040 ("Recently at another medical institution she underwent a hysterectomy complicated by bladder injury. This required two subsequent surgical procedures to repair the bladder injury.") *with* Tr. 135 & 1048 (patient discharged from the hospital on

6

December 10, 2002)). During her hospitalization, Emanuel experienced congestive heart failure, acute renal failure, and respiratory failure; she was placed on a ventilator for a three-week period. (*See, e.g.,* Tr. 941, 1035, 1060 & 1076) Emanuel was readmitted to Springhill Memorial Hospital seven days after her discharge, on December 17, 2002, with dyspnea (shortness of breath) and tachycardia (racing heart); her admitting physician noted that she had long-standing hypertension,[3] which was uncontrolled, and that she was "ill appearing" and "frail[.]" (Tr. 1035 & 1038)[4]

On April 28, 2003, Dr. James W. Sewell, plaintiff's primary treating physician and the individual who performed her hysterectomy, opined that plaintiff was unable to "work 40 hours a week at this time" given the symptoms she was exhibiting (Tr. 1083); indeed, Sewell completed a Physical Capacities Evaluation on this date and indicated thereon that Emanuel could only sit a total of three hours in an 8-hour workday, stand and/or walk a total of three hours in an 8-hour workday, and that she had a total restriction of activities involving unprotected heights, driving automotive equipment, and

---

[3] On April 14, 2003, Dr. J. Carlton Hardwick, noted a history of congestive heart failure and diagnosed hypertension with hypertensive heart disease. (Tr. 1086; *see also* Tr. 1089 (same noted on January 27, 2003))

[4] Emanuel was discharged from the hospital on December 22, 2002. (Tr. 1038)

7

exposure to dust fumes and gases (Tr. 1084).[5] Beginning in early 2003, and throughout the summer and fall of 2003 and into 2004, plaintiff consistently complained of and was treated for bladder problems, including chronic cystitis (bladder infection), abdominal pain, burning on urination, and urinary frequency. (*Compare* Tr. 1156, 1159, 1172-1174 & 1189 *with* Tr. 43 (plaintiff's hearing testimony on January 20, 2004, that the complications from the surgery included "[f]requent urine, bladder spasms, lower abdominal pain on the pelvic, raw intestines."))[6] While Dr. Sewell notified MetLife on November 13, 2003, that Emanuel had recovered to return to normal activity as of November 1, 2003, it is clear not only that Sewell noted that plaintiff could not perform strenuous work but, as well, that the last time Sewell examined plaintiff was on September 29, 2003. As established above, of

---

[5] On February 17, 2003, Dr. Sewell made the following observations on a social security determination form: "[While in the hospital,] [s]he later developed ARDS (acute respiratory distress syndrome) that very often causes death. She was on Life Support for several weeks, developed kidney failure, requiring dialysis for several weeks. Following recovery, she has been to rehab but still has marked muscular weakness, tremor of hands, and memory loss. These will probably continue. She is still under the care of a Urologist & Internists[.]" (Tr. 1113)

[6] Plaintiff's testimony that her bladder problems are attributable to complications from her surgeries is supported by the diagnoses of numerous physicians in the late summer of 2003 into early 2004 of status-post bladder injury. (*See, e.g.,* Tr. 1174 (Dr. W.T. Stevens' impressions on August 25, 2003, consisted of the following: status post iatrogenic bladder injury; overactive bladder; and hematuria); Tr. 1189 (Dr. W. Newton's assessments on October 29, 2003 included iatrogenic bladder injury); Tr. 1241 (status-post total hysterectomy and bladder injury with complications))

course, plaintiff continued to be treated for bladder problems, as a complication of her hysterectomy, well into 2004.

Taking into account the foregoing evidence, it is impossible for this Court to find that substantial evidence supports the ALJ's determination that plaintiff did not suffer from a severe physical or mental impairment for a continuous 12 month period.[7] The evidence recited above clearly establishes that, at the very least, plaintiff suffered from the severe impairment of status-post hysterectomy with surgical complications, most notably severe bladder problems. Dr. Sewell's finding that plaintiff could return to normal activity, albeit not strenuous work, as of November 1, 2003, fails to establish that plaintiff's impairment was not severe for a continuous period of twelve months. In fact, Dr. Sewell's finding establishes the contrary. By limiting plaintiff from performing strenuous work plaintiff's treating physician provided a crucial piece of evidence, particularly when combined with the evidence from other sources that plaintiff was still being treated for bladder

---

[7] This Court will not belabor the issue any more than necessary; however, in addition to the fact that plaintiff clearly experienced bladder complications from her November, 2002 hysterectomy for at least a 12-month continuous period, she could have been found to suffer from a number of other severe impairments including, the following: depression (Tr. 46, 1078-1081, 1218-1219 & 1284-1289); hypertension with hypertensive heart disease (Tr. 939, 948, 956, 1007, 1035-1038, 1086, 1089, 1090); and status-post brain infarct with dizziness (Tr. 1223-1224 & 1236; *see also* Tr. 1275).

problems, establishing that plaintiff's post-surgical bladder problems obviously did not constitute a slight or trivial impairment which had no more than minimal functional limitations on her physical ability to perform basic work activities for a period of 12 continuous months. While this information may have been relevant to the ALJ's analysis at the fourth and fifth steps of the sequential evaluation process, it fails to inform the ALJ's conclusion that plaintiff did not have a severe impairment for 12 continuous months. In other words, the issue at this step is not whether this impairment was disabling, *see* 42 U.S.C. § 423(d)(1) ("The term 'disability' means– inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"), but whether such impairment results in more than minimal functional limitations and restrictions on a claimant's ability to engage in work-related activity; in this case, the clear answer is that plaintiff's post-hysterectomy bladder problems constituted more than a trivial impairment and resulted in more than a minimal impact on her ability to engage in work and work-like activity.[8] The ALJ's determination that claimant did not have a

---

[8]  The Court notes that plaintiff's problems with urinary frequency and urgency would certainly impact her ability to engage in work. (*Cf.* Tr. 51-52 ("Mr. Miller, I'd like you to

10

severe impairment for 12 consecutive months is not supported by substantial evidence.

## **CONCLUSION**

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412,  *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 8th day of September, 2006.

---

assume a person the same age, education, and work experience as the claimant, further assume such person suffers from coronary artery disease, diverticulosis, bladder problems manifesting itself as frequent urination, and pain and depression. I'd like you to further assume that such individual, because of the bladder problems, that they're experiencing, would have to urinate about two or three times an hour, and would have to be very close to the bathroom, and would have one to two accidents a week with said individual would probably soil their clothes and have to change their clothes. I would like you to further assume that such an individual suffers from pain that is, at least, moderately severe for three hours during a normal workday. Assuming all of those facts to be true, would there be jobs that exist in substantial numbers in the national or regional economy that an individual with those impairments could perform? A I don't believe that there would be. Q What would the reasons for that be? A It would be a combination of the moderately severe pain and the accidents somebody would have."))

          <u>s/WILLIAM E. CASSADY</u>
          **UNITED STATES MAGISTRATE JUDGE**